181 F.3d 859 (7th Cir. 1999)
 In Re: J. Robin Fillion and Marcia A. Fillion, Debtors-Appellees.
Appeal of Kenneth W. Bass.
In Re: J. Robin Fillion and Marcia A. Fillion, Debtors-Appellees.
Kenneth W. Bass, Plaintiff-Appellant,
v.
Marcia A. Fillion, Defendant-Appellee.
 No. 98-2113, 98-3759
 United States Court of Appeals, Seventh Circuit
 Argued January 5, 1999
Decided June 28, 1999
 
 Appeals from the United States District Court for the Western District of Wisconsin. Nos. 98 C 56 & 98 C 458--Barbara B. Crabb, Judge.
 Before Harlington Wood, Jr., Easterbrook, and Manion, Circuit Judges.
 Manion, Circuit Judge.
 
 
 1
 Kenneth W. Bass deeded his farm to his daughter, Marcia Fillion, but Bass retained a limited life interest in the property. Eventually, Bass filed an action in Wisconsin state court to rescind the deed, and Fillion and her husband filed for bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. sec. 1301 et seq. The bankruptcy court confirmed the Fillions' Chapter 13 plan and also denied Bass's action for rescission of the deed. The district court affirmed the bankruptcy court on both issues, as do we.
 
 I.
 
 2
 In 1959, Bass acquired a 152-acre farm in Dane County, Wisconsin, and has lived there ever since. After working on the farm for many years, Bass began renting out the farm land in the 1970's, though he still resided on the farm. Bass's only child, Marcia Fillion, was raised on the farm, but left it in 1980. Over the years, Fillion and her husband, Robin, inquired about purchasing part of the 152-acre farm for building a home.
 
 
 3
 On March 29, 1993, Bass contacted Fillion and arranged to meet her at his attorney's office. At this meeting, Bass proposed that he give the farm to Fillion and her husband, with the conditions that Fillion assume the $18,000 mortgage on the farm and forgive another $5,000 debt her father owed her, and also that Bass retain a life estate in the buildings on the property. Fillion agreed, and a deed specifying these terms was drawn up and signed. Bass claims that at the same meeting, as part of the same transaction, Fillion agreed to support her father for the rest of his life. Fillion disputes this version, claiming that the only conditions to the gift of the farm were included in the deed.
 
 
 4
 In June 1994, more than a year after the gift of the farm, Marcia and Robin Fillion (and their three children) moved onto the farm. Then in September, they moved from a trailer on the farm to the house also occupied by Bass. At this point, the Fillions began paying for the mortgage, taxes, gas and food. Unfortunately for all concerned, the relationship between Bass and the Fillions became acrimonious almost immediately. After about two years of domestic disturbances, Bass filed a civil action in state court seeking to eject the Fillions from the farm and to rescind the deed giving the farm to Marcia Fillion.
 
 
 5
 During the pendency of the state court litigation, Bass and the Fillions agreed to sell 40 acres of the farm to the Wisconsin Department of Natural Resources (leaving 112 acres). The proceeds were used to satisfy a sales tax lien incurred by Bass, and the balance was paid to the mortgagee. Just days before Bass's motion for partial summary judgment was to be heard by the state court, the Fillions filed a Chapter 13 bankruptcy petition. On the date of the hearing before the state court, the Fillions did not appear, but Bass and the state court were notified of the bankruptcy filing. In violation of the automatic stay imposed by a voluntary bankruptcy filing, see 11 U.S.C. sec. 362(a)(1), Bass requested that a default judgment be entered against the Fillions for ejectment.[1] This constituted a continuation of a judicial proceeding against the debtors, and is prohibited by sec. 362(a)(1).[2]
 
 
 6
 The Fillions filed their Chapter 13 plan in September 1997. This plan proposed to sell part of the farm and to use the proceeds to satisfy the claims of creditors, including Bass. Bass objected to this plan, claiming that the plan was not feasible. Bass also initiated an adversary proceeding in the bankruptcy court on his rescission claim. The bankruptcy court denied the objection to the Chapter 13 plan and granted summary judgment to the Fillions on the rescission claim. Bass appealed both adverse decisions to the district court, which affirmed. He then appealed these decisions to this court. We heard oral argument on the claim relating to the objection to the Chapter 13 plan. Thereafter, Bass requested that we consolidate the two appeals, and that motion was granted.
 
 II.
 
 7
 We first address Bass's objection to the Fillions' Chapter 13 plan. Confirmation of a Chapter 13 plan requires a substantially different inquiry than needed for a Chapter 11 plan. If a Chapter 13 plan meets the requirements contained in 11 U.S.C. sec. 1325 (which incorporates other bankruptcy provisions), then the bankruptcy court must confirm the plan. Creditors do not vote on a Chapter 13 plan. Cf. 11 U.S.C. sec. 1129(a)(10) (in Chapter 11 proceedings, at least one impaired class must vote for the plan). Under Chapter 13, if a debtor proposes a plan which complies with 11 U.S.C. sec. 1325, a creditor has no grounds to object to the plan.
 
 
 8
 Bass argued to the bankruptcy court that should he prevail on the rescission claim, the farm would not be an asset of the estate, and therefore, the Fillions could not sell it as proposed in the Chapter 13 plan. Our review of this claim is made more difficult by the fact that Bass has neglected to tie his arguments pertaining to his rescission claim to any bankruptcy law involving Chapter 13 plans.[3] We see three plausible objections under 11 U.S.C. sec. 1325 to confirmation of this Chapter 13 plan: 1) that the plan was not filed in good faith; 2) that the plan proposes the sale of real estate, the ownership of which is disputed; and 3) that the plan is not feasible.
 
 
 9
 The bankruptcy court concluded that because the plan proposes to pay all creditors one hundred percent of the allowed claims (with interest), the plan was filed in good faith. Bass has not challenged this ruling on appeal. Also, a dispute over the ownership of the land is not sufficient to block confirmation of the Chapter 13 plan (or even the actual sale of the property). Section 1303 of the Bankruptcy Code allows Chapter 13 debtors to sell real estate just as a bankruptcy trustee could under 11 U.S.C. sec. 363(f), and this provision authorizes the trustee to sell real estate which is subject to a bona fide dispute (with the disputed claims to attach to the proceeds of the sale). 11 U.S.C. sec. 363(f)(4). Thus, the Bankruptcy Code specifically authorizes Chapter 13 debtors to do exactly what the Fillions proposed to do in their Chapter 13 plan. An objection to the plan based on merely the existence of Bass's claim of rescission could not be successful.
 
 
 10
 Bass originally objected to confirmation of the Chapter 13 plan on the grounds of feasibility. In other words, without the farm, the Fillions would not be able to make the payments required by the plan. However, the record developed before the bankruptcy court is void of any evidence pertaining to feasibility of the plan per se. The debtors did not testify about their income, debts, and cash flow. But the Chapter 13 trustee and debtors' attorney did comment to the bankruptcy court that if Bass succeeded in his rescission action, the Fillions' plan would not be feasible, and the bankruptcy court apparently accepted this representation. Assuming that feasibility of the plan depends on the Fillions profiting from the sale of at least a portion of the farm, the confirmation of the Chapter 13 plan will depend on whether Bass can succeed in his rescission claim.
 
 
 11
 So we now turn to the merits of Bass's state law rescission claim, brought in an adversary proceeding.[4] Under Wisconsin law, a gift of property from an elderly parent to his or her child in exchange for a promise of support is presumptively improvident and may be rescinded. Wagner v. Wagner, 259 N.W.2d 60, 61 (Wis. 1977). The agreement for support may be verbal, and need not be specific. Gilchrist v. Foxen, 70 N.W. 585, 589 (Wis. 1897). However, the gift and the promise of support must occur at the same time, as part of the same transaction. See Wagner, 259 N.W.2d at 61 ("If a quitclaim deed is based on a support agreement, rescission may be had on the principle of an implied condition subsequent."); Bergman v. Bernsdorf, 73 N.W.2d 595, 597-98 (Wis. 1955), modified on rehearing, 74 N.W.2d 744 (Wis. 1956) (determining whether there is a support agreement "involves the intention of the parties at the time when the deed, note and mortgage were executed . . . .").[5]
 
 
 12
 The bankruptcy court concluded that as a factual matter, the deed was not conveyed in exchange for support, in other words, that the "quid pro quo, support for the deeding over the property" was not a part of the transaction. This finding is not clearly erroneous. In his trial testimony, Bass was unable to remember the transaction wherein he deeded the farm to Fillion. He testified that at some point, Fillion promised to care for him, but he did not testify that the promise was made in exchange for the deeding of the property. Furthermore, Marcia Fillion testified that there was no discussion of support, except to the extent that by living on the farm, the Fillions would be able to monitor Bass's health condition, and get emergency or other medical help as needed. And the record does not reveal when this promise to provide support related to Bass's medical care occurred.
 
 
 13
 Bass argues that the bankruptcy court erroneously required that the support agreement contain specific terms regarding the nature of support provided, and quotes the bankruptcy court's oral decision: "the most fundamental question is whether there was an agreement to provide support and whether there was an agreement to provide support which was sufficiently articulated that it could be determined to have any particular terms." This quote, however, is taken out of context. The bankruptcy court was discussing Bass's claim of fraudulent misrepresentation when he noted the absence of "specific terms," and he concluded "I don't find anything that I could find would have been a statement of a representation, false when made and known to be false on which anybody was intended to rely to their detriment."
 
 
 14
 Subsequently in the decision, the bankruptcy court turned to the issue of rescission of the deed, and it is in that context that the bankruptcy court held that there was no support agreement exchanged for the deeding of the property. The bankruptcy court orally ruled:
 
 
 15
 So the suggestion that this gift to a child was made in exchange for support, I just can't find the fundamental element that that was an exchange quid pro quo, support for the deeding over of the property. Now, as it worked out, some of the uglier facts I ever had presented in a soap opera in this case ensue after the deed was given, but the deed at the time it was given was appropriate. It did exactly what it said it would do. It gave the fee title to Marcia Fillion and gave the life estate in all buildings to Mr. Bass. I can find no basis to reform or rescind the conveyance.
 
 
 16
 Thus, the bankruptcy court applied the correct legal standard, by requiring that the support agreement serve as consideration for the conveyance.
 
 
 17
 Bass also argues that there was a mutual mistake in the contract which allows him to rescind the contract. See Kowalke v. Milwaukee Elec. R. & Light Co., 79 N.W. 762 (Wis. 1899). Bass contends that he thought that the contract provided for his support, and that Fillion thought that she would own the property in fee simple. As both were mistaken about the nature of the contract, rescission would be an appropriate remedy. We note that "mere mistake of a party as to the legal meaning, scope, or effect of an instrument does not vitiate it." St. Norbert College Foundation, Inc. v. McCormick, 260 N.W.2d 776, 781 (Wis. 1978) (citing Sorce v. Rinehart, 230 N.W.2d 645, 649 (1975)) (internal punctuation omitted). Mutual mistakes must concern past or present facts, not unexpected facts that occur after the document is executed. Continental Cas. Co. v. Wisconsin Patients Compensation Fund, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991). Therefore, even if both Bass and Fillion were ignorant of the effect of the granting of a life estate, a mutual mistake of fact did not exist when Bass and Fillion signed the deed.
 
 
 18
 Lastly, Bass contends that Bass and Fillion did not have a meeting of the minds as to the terms of the transaction on March 29, 1993, and therefore, no agreement was made. The bankruptcy court found this not to be the case. It concluded that the agreement reached on March 29, 1993, between Bass and Fillion did not include support. As the Wisconsin Supreme Court recently explained,
 
 
 19
 First, parties do not need to agree subjectively to the same interpretation at the time of contracting in order for there to be a mutual assent, because a literal "meeting of the minds" is not required. Instead, mutual assent is judged by an objective standard, looking to the express words the parties used in the contract. Second, when parties disagree about their intentions at the time they entered into a contract, the question is one of contract interpretation for the jury, not mutual assent or contract formation. In fact, if a disagreement between parties as to their intent could support a claim of indefiniteness, juries would rarely be called upon to interpret a contract, because nearly every contract challenged in court would be void for indefiniteness.
 
 
 20
 Management Computer Svcs., Inc. v. Hawkins, Ash, Baptie & Co., 557 N.W.2d 67, 76-77 (Wis. 1996) (citations omitted). In this case, there was an objective meeting of the minds between Bass and Fillion, as evidenced by the two parties' signatures on the deed. Bass failed to prove an oral contract for support was part of this agreement. Therefore, the contract cannot be rescinded for a lack of assent to the contract.
 
 III.
 
 21
 The bankruptcy court applied the correct legal standards, and its fact finding was not clearly erroneous. As the gift of the farm was not in exchange for a promise of support, Wisconsin courts would not construe the promise of support as a condition precedent to the deeding of the property. Of course, this does not mean that Bass has no claim for money damages, and Bass still owns a life interest in the buildings on the farm. The bankruptcy court correctly denied Bass's claim for rescission of the deed, and therefore, the bankruptcy court was also correct to confirm the Fillions' Chapter 13 plan.
 
 
 22
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Bass's motion for summary judgment did not seek a ruling on his claim for rescission.
 
 
 [2]
 The state court, aware of the automatic stay in place, misconstrued a narrow exception to sec. 362(a)(1), and granted a default judgment. Section 362(a) has been interpreted so as not to bar certain "ministerial" acts, which are essentially clerical in nature. See, e.g., Bonilla v. Trebol Motors Corp., 150 F.3d 77, 86 (1st Cir. 1998). However, "the state court's actions in ordering a default and directing the entry of a judgment possess a distinctly judicial, rather than a ministerial, character." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). The bankruptcy court found a violation of the automatic stay and imposed a $120 sanction against Bass.
 
 
 [3]
 In fact, Bass failed to cite a single case involving bankruptcy law or even one section of the Bankruptcy Code in his appellate briefs.
 
 
 [4]
 Because Bass's claim involves an interest in land, the matter was properly brought as an adversary proceeding. See Fed. R. Bankr. P. 7001. The bankruptcy court has concurrent jurisdiction with the state court to adjudicate prepetition, unliquidated claims brought against debtors, see 28 U.S.C. sec. 157(b)(2)(O), and Bass did not seek abstention by the bankruptcy court, see 28 U.S.C. sec. 1334(c). The bankruptcy court first addressed the rescission claim in the context of the plan confirmation proceeding, and then conducted an evidentiary hearing. The bankruptcy court then relied on the factual findings made in the evidentiary hearing in granting summary judgment in the adversary proceeding.
 
 
 [5]
 After Bass deeded the farm to Fillion, Fillion took out a mortgage on the farm. The parties have not addressed the validity of the bank's security interest in the farm in the event Bass prevails in his rescission action. Therefore, we decline to address the issue as well.