**FAR OUT PRODUCTIONS, INC.,
a California corporation,
Plaintiff–Appellee,**

v.

**Lee OSKAR; Morris Dickerson; Bran Aitchison; Bruce Solar, individually and d/b/a Absolute Artists, Defendants,**

and

**Howard Scott, Defendant–Counter–Claimant–Appellant,**

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

**Harold Brown, Plaintiff–Cross–Defendant–Appellant,**

v.

**Jerry Goldstein, Defendant–Appellee.**

No. 99–56739.

United States Court of Appeals, Ninth Circuit.

Submitted April 4, 2001 *

Filed April 24, 2001

R.App. P. 34(a)(2).

Matthew L. Pepper, The Law Offices of Pepper, Moore & Smith, New Orleans, Louisiana, for the defendant-counter-claimant-appellant and plaintiff-cross-defendant-appellant.

Jay M. Coggan, Law Offices of Jay M. Coggan, Beverly Hills, California, for the plaintiff-appellee and defendant-appellee.

Before: FERGUSON and SILVERMAN, Circuit Judges, and BREYER,** District Judge.

** The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

BREYER, District Judge:

Far Out Productions, Inc. filed suit against Howard Scott, an original member of the musical group "WAR," and other artists with whom Scott was performing, alleging infringement of the federally-registered trademark "WAR." Scott responded by filing a counterclaim alleging, *inter alia,* fraud, conversion, and trademark infringement. Harold Brown, another original member of the group, filed a direct action against Far Out Productions and its president Jerry Goldstein (collectively, "the appellees"), alleging that the appellees had obtained the trademark fraudulently. The cases were consolidated, and Scott and Brown ("the appellants") appeal the district court's orders: (1) denying the appellants' motion for summary judgment; (2) granting the appellees' motion for summary judgment; and (3) denying the appellants' motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

### A. Factual Background

In the late 1960s, the appellee Jerry Goldstein, Steven Gold, and Eric Burdon, the former lead singer of a British band known as The Animals, formed Far Out Productions, Inc., Far Out Music, Inc., and Far Out Management, Ltd. (collectively, "the Far Out entities"). In January 1969, Goldstein, Gold, and Burdon met with members of a band known as "The Night Shift," whose members included the appellants, to discuss forming a band. The parties agreed to form a band known as "Eric Burdon and WAR."

On June 8, 1969, the group performed commercially for the first time at a nightclub known as Mother Lizard's Ball in San Bernardino, California. The band began production of its first album, entitled "Eric Burdon Declares WAR," soon afterward, and the album was released in March 1970. The album became very successful, and the original members of the band eventually signed exclusive recording and publishing agreements with the Far Out entities.

Burdon eventually lost interest in the group. Goldstein then decided to produce a second album with the musicians who had previously been Burdon's back-up band. According to Goldstein, he decided to permit the group to use the name "WAR" on the album.

A long series of lawsuits and settlements soon followed. In 1979, the members individually signed a set of contracts with the Far Out entities, including an agreement that transferred ownership of the trademark "WAR" to Far Out Productions. On July 2, 1979, soon after executing those contracts, Far Out Productions filed an application for the service mark "WAR" with the United States Patent and Trademark Office ("PTO"). The PTO issued Trademark Registration No. 1,169,651 to Far Out Productions on September 15, 1981.

### B. The Florida Judgment

In November 1982, four of the five remaining original members of the band, including Brown and Scott, sued the Far Out entities, Gold, and Goldstein in Florida state court. The appellants alleged that the Far Out entities had breached the 1979 contracts and that the Far Out entities had fraudulently secured the 1979 agreements by promising the appellants that the appellants would retain ownership of the trademark. Brown later voluntarily dismissed himself from the action. In an affidavit allegedly filed with the Florida court, Brown indicated that the suit was without merit and was filed fraudulently in order to terminate the 1979 agreements. Meanwhile, the Far Out entities were in deep

financial trouble. Far Out Productions and Goldstein filed for bankruptcy under Chapter 11 on June 19, 1984.

On October 11, 1984, the Florida trial court entered an order and a partial final judgment in favor of the appellant Scott and the band members. The court deemed as established the material allegations of the complaint, including that the trademark "WAR" was procured by fraud. However, the court noted that its orders did not impact upon Far Out Productions in a manner inconsistent with the Federal Bankruptcy Code. In a final judgment entered on January 10, 1986, the court also noted that the claims against Goldstein and Far Out Productions were severed by virtue of the appellees' pending bankruptcies.

### C. Proceedings After the Florida Judgment and Before the Present Suits

In 1985, the appellant Scott and other band members filed a petition for cancellation of Far Out Productions' mark "WAR" with the PTO. That proceeding was halted due to the bankruptcy stay. Meanwhile, in 1986, the appellees licensed Brown to perform publicly as WAR. When the appellees learned that Scott and some of the other band members were also performing as WAR, the appellees applied to the bankruptcy court for permission to bring suit to enforce the trademark. After receiving permission to bring suit, Far Out Productions filed an action for trademark infringement that was nearly identical to its present complaint.

Shortly after the suit was filed, Far Out Productions entered into a global settlement with the appellants and the other band members. On April 1, 1987, each of the band members signed written agreements that agreed to dismiss with prejudice any and all lawsuits, even if the lawsuit had been reduced to a final judgment.

The contracts also reaffirmed Far Out Productions' exclusive ownership in the name "WAR." Scott also eventually executed joint stipulations to dismiss with prejudice and vacate the Florida judgment.

On August 24, 1987, Goldstein filed an incontestability affidavit with the PTO on behalf of Far Out Productions. The affidavit declared that Far Out Productions was the owner of the mark and that the mark had been in continuous use for five consecutive years. The declaration also indicated that there had been no final decision adverse to the registrant's claim to ownership of the mark and that there were no proceedings pending in any court.

### D. The Procedural History of the Present Suits

From 1987 to 1995, the parties intermittently attempted to work out an arrangement under which the band members would perform using the name "WAR," but those efforts were ultimately unsuccessful. On February 28, 1996, Far Out Productions filed the present suit against the appellant Scott and the other band members, alleging unfair competition and trademark infringement. Far Out Productions later amended the complaint to add Brown as a defendant.

In response to Far Out Productions' complaint, Scott filed a counterclaim against Far Out Productions and Goldstein alleging fraud, trademark infringement, and conversion. Brown filed a direct action against the appellees seeking to cancel the trademark registration, to have ownership of the trademark returned to the appellants, and to obtain damages for copyright infringement and breach of contract.

On March 21, 1997, Scott moved for summary judgment on Far Out Productions' complaint on two grounds: (1) that

the Florida judgment precluded the appellees from relitigating the ownership of the trademark; and (2) that the appellees' failure to disclose the Florida judgment in the incontestability affidavit rendered the affidavit false and the trademark registration invalid. The district court denied Scott's motion, finding that there were triable issues of fact as to whether the Florida judgment applied to Far Out Productions and Goldstein.

On February 2, 1999, the appellees filed a motion for summary judgment. The district court held a hearing on March 16 and 17, 1999 and granted the appellees' motion. On June 10, 1999, the district court issued a judgment and a permanent injunction, finding that Far Out Productions was the sole owner of the registered trademark "WAR" and that the appellants had infringed upon the mark.

On June 28, 1999, the appellants filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 52(b), claiming that there was newly discovered evidence and that the appellees' counsel had submitted false testimony to the court. On August 19, 1999, the district court heard oral argument and denied the motion. In a written order entered on August 20, the court observed that much of the evidence the appellants presented in their motion was already before the court at the summary judgment hearing. The court regarded the appellants' evidence of misconduct and false testimony as unconvincing and found that the appellants' "new" evidence was procedurally and substantively defective.

## II. STANDARD OF REVIEW

### A. The Summary Judgment Orders

The Ninth Circuit reviews a district court's summary judgment order de novo. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.), *cert. denied,* 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999). Accordingly, the appellate court's review is governed by the same standard used by the district court under Federal Rule of Civil Procedure 56(c). *See Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1221 (9th Cir.1999). The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505.

### B. The Motion for a New Trial or to Amend the Judgment

A district court's denial of a motion for a new trial or to amend a judgment pursuant to Federal Rule of Civil Procedure 59 is reviewed for an abuse of discretion. *See De Saracho v. Custom Food Mach., Inc.,* 206 F.3d 874, 880 (9th Cir.) (standard for a motion for a new trial), *cert. denied,* —— U.S. ——, 121 S.Ct. 183, 148 L.Ed.2d 126 (2000); *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 928–29 (9th Cir.2000) (standard for a motion to amend a judgment). To establish that a district court abused its discretion in denying such a motion based on newly discovered evidence, the movant must show that: "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the

newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defenders of Wildlife,* 204 F.3d at 929.

## III. DISCUSSION

### A. The Preclusive Effect of the Florida State Court Judgment

 The appellants assert that the district court erred in declining to give preclusive effect to the Florida judgment. Because the Florida judgment determined that the Far Out entities obtained the trademark fraudulently, the appellants argue, the appellees have no right to the trademark. Moreover, the appellants claim that since the Florida judgment was an adverse decision against the appellees, the appellees' incontestability affidavit was false. Because deciding whether to apply issue preclusion (also referred to as collateral estoppel) is a question of law, we review de novo a district court's refusal to give a state court judgment preclusive effect. *See Zamarripa v. City of Mesa,* 125 F.3d 792, 793 (9th Cir.1997).

### 1. The Appropriate Collateral Estoppel Standard

 Under the federal full faith and credit statute, federal courts must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738. As a result, the district court should have applied Florida law in determining whether to give preclusive effect to the Florida judgment. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ("Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts."); *In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir. 1995) (applying Florida collateral estoppel doctrine to a default judgment rendered in Florida state court).

 "Collateral estoppel, or estoppel by judgment, is a judicial doctrine which in general terms prevents identical parties from relitigating issues that have previously been decided between them." *Mobil Oil Corp. v. Shevin,* 354 So.2d 372, 374 (Fla.1977). Under Florida law, courts apply collateral estoppel when: (1) the parties are identical; [1] (2) the issues are identical; and (3) the issue was "fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.; see Porter v. Saddlebrook Resorts, Inc.,* 679 So.2d 1212, 1214–15 (Fla.App. 1996) (describing the collateral estoppel test as comprising five substantially similar elements).

### 2. The Preclusive Effect of the Florida Judgment

 The appellants contend that the Florida judgment involved the same parties and the same issues and resulted in a final judgment on the merits. Even though the final judgment was only issued

---

1. Unlike federal courts, Florida courts continue to require the mutuality of parties in deciding whether to give preclusive effect to a prior civil judgment. *See Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano,* 450 So.2d 843, 845 (Fla.1984) ("[T]he well established rule in Florida has been and continues to be that collateral estoppel may be asserted only when the identical issue has been litigated between the same parties or their privies."). Florida law does not require the mutuality of parties for criminal judgments. *See Starr Tyme, Inc. v. Cohen,* 659 So.2d 1064, 1067 (Fla.1995) (recognizing that *Romano* was superseded as to criminal judgments by Florida Statutes chapter 772.14).

against Far Out Music, Far Out Management, and Gold, the appellants argue that Far Out Productions and Goldstein controlled the Florida litigation and had filed for bankruptcy merely to avoid being subject to the Florida suit. While the Florida judgment did resolve some of the same issues as the present suit, it did not involve the same parties.

### a. Whether the Florida Judgment Decided the Identical Issue

The parties do not seriously dispute whether the Florida judgment decided at least some of the same issues present in this litigation. The Florida court's partial final judgment found that Gold and Goldstein had fraudulently induced the band members into assigning the trademark to the Far Out entities in the 1979 contracts. While the court did not assign the trademark to the band members or enjoin the Far Out entities from asserting the trademark in the future, it did actually and necessarily resolve whether the Far Out entities legitimately obtained ownership in the trademark through the 1979 contracts. If the Florida judgment were to otherwise satisfy the requirements for collateral estoppel, the appellees would be precluded from asserting that they own the trademark as a result of the 1979 contracts.[2]

### b. Whether the Florida Judgment Involved the Same Parties

Whether the Florida judgment involved the same parties is a somewhat more difficult question. On its face, the Florida judgment did not apply to Goldstein and Far Out Productions. The trial court specifically noted in its default order, partial final judgment, and final judgment that its orders did not affect Far Out Productions or Goldstein in a manner inconsistent with

the Bankruptcy Code and that the claims against Goldstein and Far Out Productions were severed by virtue of the appellees' pending bankruptcies. On the surface, then, the Florida judgment did not involve the same parties as the present suit and therefore should not collaterally estop the appellees from relitigating whether they legitimately own the trademark.

The appellants contend, however, that the appellees should be estopped from arguing that they did not participate in the Florida litigation since they were in privity with the other Far Out entities. The appellants assert that all three of the Far Out entities were essentially a single enterprise and that the appellees declared bankruptcy merely to avoid being bound by the Florida judgment.

■■■ The appellants' argument is unavailing. For a third party to be considered in privity with a party involved in litigation under Florida law, the third party "must have an interest in the action such that she will be bound by the final judgment as if she were a party" or must be "virtually represented by one who is a party ..." *Stogniew v. McQueen*, 656 So.2d 917, 920 (Fla.1995). There is nothing in the record to indicate that Far Out Productions and Goldstein were virtually represented by the other Far Out entities and Gold at the time of the Florida judgment.

■■■ More importantly, the Florida judgment cannot be binding on the appellees as a matter of federal bankruptcy law. When a debtor files for bankruptcy, subject to certain exceptions not present here, section 362(a) of the Bankruptcy Code automatically stays any other judicial proceeding involving the debtor. *See* 11

---

**2.** The Florida judgment did not (and could not), however, preclude the appellees from asserting ownership in the trademark arising from the 1987 contracts.

U.S.C. § 362(a)(1). The automatic stay provision of the Bankruptcy Code "plays a vital role in bankruptcy. It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." *In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992) (describing the automatic stay as "one of the fundamental debtor protections provided by the bankruptcy laws"). The provision provides stability and certainty to both the debtor and creditors who might otherwise be tempted to bring independent actions to obtain default judgments. *See id.* at 571–72.

■ In fact, the automatic stay provision is so central to the functioning of the bankruptcy system that this circuit regards judgments obtained in violation of the provision as void rather than merely voidable on the motion of the debtor. *See id.* at 571. Courts regularly void state court default judgments against debtors when the judgments are obtained in violation of the automatic stay provision, even where the debtor filed for bankruptcy in the midst of the state court proceedings. *See, e.g., In re Fillion,* 181 F.3d 859, 861 (7th Cir.1999); *In re Graves,* 33 F.3d 242, 247 (3d Cir.1994).

■ On occasion, courts have recognized a narrow equitable exception to the strict enforcement of the automatic stay provision, such as when the debtor has participated extensively in a suit leading to a default judgment before declaring bankruptcy. *See, e.g., In re Docteroff,* 133 F.3d 210, 215 (3d Cir.1997); *In re Bush,* 62 F.3d 1319, 1324 (11th Cir.1995); *In re Daily,* 47 F.3d 365, 368–69 (9th Cir.1995); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990). Although the Florida suit was initially filed in November 1982 and Goldstein and Far Out Productions did not file for bankruptcy until June 1984, the record here does not reflect that Goldstein or Far Out Productions participated in the Florida litiga-

tion in a meaningful way before declaring bankruptcy, that the appellees declared bankruptcy merely to avoid being subject to the Florida judgment, or that the appellees failed to notify the Florida plaintiffs of the bankruptcy applications.

In fact, the equities here may very well favor the appellees. The appellant Brown admitted in an affidavit that the Florida suit was fraudulent in several respects (including jurisdictionally), the appellants signed contracts explicitly releasing the appellees from the Florida judgment, and the appellants even moved to vacate the judgment in accordance with those agreements. Permitting the appellants to assert the Florida judgment as preclusive in spite of the bankruptcy stay provision under those circumstances would not be a very compelling exercise of equitable discretion. Given the facial inapplicability of the Florida judgment to the appellees, the importance of the automatic stay provision, and the equitable considerations, the Florida judgment did not involve the same parties, and the district court did not err in declining to give the Florida judgment preclusive effect.

### c. Whether the Florida Judgment was Final

Because the Florida judgment did not involve the same parties, this Court need not consider whether the judgment was final under Florida law.

### 3. Whether the Incontestability Affidavit was False

The appellants also argue that the incontestability affidavit Goldstein submitted to the PTO in 1987 was false. In filing an incontestability affidavit, a trademark owner must swear that there has been no final decision adverse to the registrant's claim of ownership or right to register the mark. *See* 15 U.S.C. § 1065.

For the same reasons that the Florida judgment does not have a preclusive effect in this litigation, Goldstein was not required to disclose the judgment. He was not a party to the Florida suit, and the 1987 agreements with the appellants vacated the Florida judgment. His incontestability affidavit was therefore not false.

Even if the Florida judgment were a final adverse decision, Goldstein can only be adjudicated to have filed a fraudulent oath if he acted with scienter. If Goldstein had a good faith belief that the Florida judgment was irrelevant, he cannot be found to have submitted a false affidavit. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31.79, at 31–136.1. The appellants did not present any evidence, either on appeal or, apparently, in the district court, that Goldstein acted in bad faith or with knowledge that he should have disclosed the Florida judgment. Since the appellants did not present any evidence of Goldstein's state of mind, they did not even meet their initial burden in moving for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Moreover, even if Goldstein knowingly submitted a false declaration such that the appellees' federal registration should be canceled, the appellees could (and did) still bring suit alleging common law trademark infringement. *See McCarthy on Trademarks,* § 31:60, at 31–109 (noting that "[i]t has been held several times that even if defendant succeeds in proving that the plaintiff's registration was fraudulently obtained, plaintiff's common law rights in the mark continue unabated" even if the registration is canceled). The district court therefore did not err in denying the appellants' motion for summary judgment as to the appellees' incontestability affidavit.

## B. The Appellees' Motion for Summary Judgment

The appellants have raised three challenges to the district court's March 1999 order granting summary judgment for the appellees: (1) that the order was erroneous since the court had previously found that there were genuine issues of material fact in denying the appellants' motion for summary judgment in April 1997; (2) that a district court may not grant summary judgment when the non-moving party has alleged that the movant committed fraud; and (3) that they filed affidavits in opposition to the appellees' motion that the district court did not adequately consider.

The appellants' first argument merits little attention. There may be genuine issues of fact precluding summary judgment on behalf of one party while at the same time the undisputed facts warrant summary judgment for the other party. In addition, over the course of the two years between the two motions, the parties engaged in discovery and presented additional evidence to the district court.

The appellants' second argument is also unconvincing. The appellants cite *Haung Tang v. Aetna Life Insurance Co.,* 523 F.2d 811 (9th Cir.1975), for the proposition that summary judgment is never appropriate when a party's state of mind is at issue. *See* 523 F.2d at 814 ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment.") (quoting *Consolidated Elec. Co. v. United States,* 355 F.2d 437, 438 (9th Cir.1966)). The appellants' contention fails for three reasons. First, *Haung Tang* is distinguishable as addressing the defense of insanity rather than fraud. Unlike an allegation of fraud, a person asserting an insanity defense may be able to raise a genuine issue merely by declaring that he was insane. Evidence of fraud, however, must reveal

the *opposing* party's state of mind, rather than the mental state of the party asserting the affirmative defense. The appellants cannot preclude summary judgment simply by alleging that Goldstein committed fraud; they must raise a genuine issue of material fact as to each of the elements of that defense.

■■■ Second, the appellants' mere assertion that Goldstein committed fraud is not in itself sufficient to prevent summary judgment. A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. Instead, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (noting that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Here, the appellants failed to present evidence of fraud to prevent summary judgment. Indeed, the appellants did not even dispute Goldstein's assertion that he hired the group members to be a back-up band for Burdon, suggesting that Goldstein and the Far Out entities were the rightful owners of the trademark from the beginning. *See Robi,* 173 F.3d at 740 (noting that the manager of a singing group may have trademark rights to the name of the group that are superior to the rights of the band members).

Third, it is not clear that the appellants' allegations of fraud in the Florida judgment are relevant to the present litigation. Even if Goldstein committed fraud in obtaining the trademark in the 1979 contracts, the parties signed new contracts in

1987 in which the appellants transferred their interest in the trademark to the appellees. The appellants did not present any evidence that the appellees procured the 1987 agreements through fraud. Thus, even if Goldstein had fraudulently obtained the trademark originally, the district court could properly grant summary judgment on the ground that the appellees had common law trademark rights based on the 1987 agreements.

■■■ Finally, the appellants' third argument-that the district court did not adequately consider affidavits that raised a genuine issue-is similarly unpersuasive. As an initial matter, the affidavits in the Excerpts of Record are unsigned and undated. Leaving aside whether the affidavits are legitimate, admissible evidence, they are insufficient to raise a genuine issue of material fact. As the district court noted in detail at the March 1999 summary judgment hearing, the affidavits are entirely conclusory. The declarations do not present any specific facts to support the appellants' claims of fraud or to establish that the appellants were entitled to payments that they did not receive.

Thus, the appellants failed to set forth specific facts or identify with reasonable particularly the evidence that precluded summary judgment. The district court therefore did not err in granting the appellees' motion for summary judgment.

## C. The Appellants' Motion for a New Trial or to Amend the Judgment

The appellants contend that the district court erred in denying their motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) or to amend the judgment pursuant to Rule 52(b). The appellants raised several grounds before the district court for revising the judgment, including the discovery of allegedly new evidence regarding the initial use of the trademark

and an assertion that the appellees' attorney had committed misconduct and submitted false testimony. To establish that the district court abused its discretion in denying their motion for a new trial based on the newly discovered evidence, the appellants must show that they discovered the evidence after trial, that they could not have discovered the evidence sooner through the exercise of reasonable diligence, and that the new evidence is of such magnitude that it would likely have changed the outcome of the case. *See Defenders of Wildlife*, 204 F.3d at 929.

On appeal, the appellants identify two pieces of "new" evidence as sufficient to justify amending the judgment or permitting a new trial. First, the appellants presented evidence to the district court that Far Out Productions was not incorporated until October 1969. The district court properly rejected that argument, both procedurally, since the appellants could have obtained that evidence sooner, and substantively, because the precise date of Far Out Productions' incorporation is immaterial given that Goldstein could have owned the mark through his personal efforts or through the 1987 settlement contracts. *See Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir.1996) (noting that a party seeking to amend a judgment under Rule 52(b) cannot raise arguments that could have been raised prior to the issuance of the judgment); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n. 6 (9th Cir.1994) (noting that a trial court is under no obligation to consider evidence that was either in the parties' possession at the time of summary judgment or could have been discovered with reasonable diligence).

The other piece of new evidence is an article, apparently not presented to the district court, describing WAR's first commercial performance in June 1969. In the appellants' view, the article is "documentary" proof that the group made first commercial use of the mark before Far Out Productions was incorporated, thereby vesting the members of the band, not the appellees, with ownership of the mark.

Like the appellants' "new" evidence of Far Out Productions' incorporation date, the article is insufficient to establish that the district court abused its discretion in denying the appellants' motion for a new trial. As a procedural matter, it is not clear that the appellants may properly raise the article as new evidence. They have not shown that they discovered the evidence after trial or that they could not have discovered the evidence sooner through the exercise of reasonable diligence. Indeed, the appellants could have submitted declarations of their own describing the group's first commercial use of the name "WAR" to support their claim to first use.

Moreover, the article is simply immaterial. The article, which labels the group as "Eric Burdon's War," merely describes the group's performance. The article is consistent with Goldstein's declaration regarding the early formation and management of the group and does not call into question the appellees' claim that the band members were hired as employees to serve as back-up for Burdon. The article might be pertinent if there were two competing groups claiming that they were the real WAR and the article identified which group first made commercial use of the mark. However, since this dispute is between individuals who used the name together, the article is of little significance in resolving which party owns the trademark, let alone of such magnitude that its production would have changed the outcome of the case. Moreover, the article does not (and could not) say anything about the subsequent contracts in which the band

members assigned their interests in the trademark to Far Out Productions.

The district court therefore did not err in denying the appellants' motion for a new trial. The appellants' other asserted bases for a new trial-attorney misconduct and false testimony-have no support in the record submitted on appeal.

## IV. CONCLUSION

Because the district court did not err in declining to give the Florida judgment preclusive effect, the court did not err in denying the appellants' motion for summary judgment. The district court also did not err in granting the appellees' motion for summary judgment and denying the appellants' motion for a new trial. Accordingly, the district court's orders are

AFFIRMED.