SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-16-1077-LDoKi |
| GO GLOBAL, INC., | Bk. No. 2:10-bk-14804 |
| Debtor. | Adv. No. 2:14-ap-1173 |
| GO GLOBAL, INC., | |
| Appellant, | |
| v. | **M E M O R A N D U M**[*] |
| SIG ROGICH, Trustee of the Rogich Family Irrevocable Trust; IMITATIONS, LLC; ELDORADO HILLS, LLC; TELD, LLC, | |
| Appellees. | |

Argued and Submitted on October 21, 2016
at Las Vegas, Nevada

Filed - November 22, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gary A. Spraker, Bankruptcy Judge, Presiding

Appearances: Samuel A. Schwartz argued for Appellant Go Global, Inc.; Samuel S. Lionel of Fennemore Craig, P.C. argued for Appellees Sig Rogich and Imitations, LLC; Andrew Mark Leavitt argued for Appellees Eldorado Hills, LLC and TELD, LLC.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: LAFFERTY, DORE,** and KIRSCHER, Bankruptcy Judges.

## I. INTRODUCTION

Prepetition, Appellant Go Global, Inc. ("Go Global") and its principal, Carlos Huerta, sold their membership interest in Eldorado Hills, LLC ("Eldorado") to Appellee Sig Rogich, Trustee of the Rogich Family Irrevocable Trust ("Rogich Trust") for approximately $2.7 million. Under the purchase agreement, the purchase price was to be paid solely from future distributions or proceeds from Eldorado; no other source of payment was specified, and payments were not due on any particular date. Postpetition, Rogich Trust transferred its membership interest in Eldorado to TELD, LLC ("TELD") in what Go Global alleged was an attempt to avoid Rogich Trust's obligations under the purchase agreement.

Although Go Global listed its receivable from Rogich Trust on Schedule B, none of the numerous disclosure statements filed by Go Global mentioned any claim against Rogich Trust, nor did the plan provide that it would be funded from any recovery on that claim. Shortly after Go Global's plan was confirmed, Go Global transferred its rights under the purchase agreement to Huerta, as Trustee of the Alexander Christopher Trust, which sued Rogich Trust in state court to recover the amounts owed under the purchase agreement (the "State Court Action"). The state court granted Rogich Trust's motion for partial summary judgment dismissing the claims against Rogich Trust on grounds of judicial estoppel because Go Global had not disclosed its claim against

---

** Hon. Timothy W. Dore, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

-2-

Rogich Trust in its disclosure statement. Huerta and the Alexander Christopher Trust appealed, but the appeal was dismissed as untimely.[1]

The Alexander Christopher Trust then transferred its rights under the purchase agreement back to Go Global, which immediately filed an adversary proceeding in the bankruptcy court against Rogich Trust, Eldorado, TELD, and Imitations, LLC ("Imitations"), seeking to recover funds owed under the purchase agreement. The complaint sought to hold the additional parties liable under theories of conspiracy and aiding and abetting Rogich Trust in avoiding its obligations under the purchase agreement. On defendants' motions, the bankruptcy court dismissed the complaint based on the claim preclusive effect of the state court judgment and denied Go Global's motion to amend its complaint.

After independent review of this matter, we hold that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding. Accordingly, we would affirm dismissal on that ground alone. Alternatively, if the bankruptcy court had jurisdiction, we hold that it did not err in ruling that claim preclusion barred Go Global's claims in the adversary proceeding, and we affirm on that basis.

## II. FACTUAL BACKGROUND

Carlos Huerta is the sole shareholder and president of Go Global. Prior to the commencement of Go Global's bankruptcy

---

[1] On April 20, 2016, the state court plaintiffs moved for reconsideration of the order granting partial summary judgment. That motion was denied on April 28, 2016. Plaintiffs appealed to the Nevada Supreme Court on June 6, 2016.

-3-

case, Huerta, Go Global, and Rogich Trust held ownership interests in Appellee Eldorado. Eldorado's primary asset is real property in Clark County, Nevada.

On October 30, 2008, Huerta, Go Global, and Rogich Trust executed a purchase agreement assigning Huerta's and Go Global's membership interest to Rogich Trust (the "Purchase Agreement") for $2,747,729.50. The Purchase Agreement did not require any down payment; rather the entire amount of the purchase price was financed, at no interest, and was to be paid "from future distributions or proceeds (net of bank/debt owed payments and tax liabilities from such proceeds, if any) distributed to Buyer at the rate of 56.20% of such profits, as, when and if received by Buyer from [Eldorado]." An assignment of the sellers' interest signed by Huerta, individually and on behalf of Go Global, was attached to the Purchase Agreement.

On March 23, 2010, Go Global filed a chapter 11[2] bankruptcy petition. On Schedule B of its schedules of assets and liabilities, Go Global listed a receivable against Rogich Trust of $2,747,729.50. Huerta and his wife, Christina Huerta, also filed a joint chapter 11 petition; the two cases were jointly administered.

A little over a year later, on April 4, 2011, Huerta and Go Global filed their initial joint disclosure statement. The disclosure statement did not identify or discuss any claims by

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

-4-

Go Global against Rogich Trust. Huerta and Go Global filed two subsequent amended disclosure statements, neither of which identified or discussed any claims against Rogich Trust. The Third Amended Joint Disclosure Statement filed April 8, 2013, provided that all future causes of action would vest in Go Global free and clear of all liens, claims, charges, or other encumbrances.[3] Section F(2)(b) of the Third Amended Joint Disclosure Statement further provided:

> [N]o preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, the Confirmation Order).

At some point in 2012, Huerta learned that Rogich Trust had conveyed its interest in Eldorado to TELD. On November 7, 2012, Brandon B. McDonald, counsel for Huerta and Go Global, mailed a letter to Sig Rogich regarding the amounts due his clients under the Purchase Agreement and outlining a theory that Rogich Trust had either breached or evaded the terms of the Purchase Agreement and frustrated the just expectations of the sellers:

> Rather than distribute profits or otherwise repay the Seller (Huerta and Go Global), we have reason to believe that your interests have been inappropriately transferred. This effectively negated any possible

---

[3] The Third Amended Joint Disclosure Statement was not included in Appellant's Excerpts of Record. In its brief, Appellant cites to the bankruptcy court docket, and we have exercised our discretion to review that docket and pleadings, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

recovery of the monies provided by the Seller through profits or sale of the business/real property owned by Eldorado Hills, LLC.

On July 22, 2013, the bankruptcy court entered an order confirming Go Global's Third Amended Joint Plan of Reorganization. The confirmed plan provided for payment of 100 percent of the principal amount of allowed general unsecured claims from recoveries from the consolidated debtors' $5.5 million judgment against Paulson Group. The confirmed plan also contained provisions consistent with and mirroring those within the Third Amended Joint Disclosure Statement for the maintenance and preservation of causes of action, including:

[A]fter the effective date, the Reorganized Debtors shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, . . . whether existing as of the Commencement Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed [sic] in the Chapter 11 Cases.

About a week after entry of the confirmation order, on July 30, 2013, Go Global transferred all of its rights, title, and interests under the Purchase Agreement to the Alexander Christopher Trust pursuant to a one-page assignment of contract. The assignment expressly included all causes of action as allowed under law arising from the Purchase Agreement.

The next day, Huerta, individually and as Trustee of the Alexander Christopher Trust (as assignee of Go Global), along with a third plaintiff, Nanyah Vegas, LLC,[4] filed suit against Rogich Trust and Eldorado in the District Court for Clark County,

---

[4] According to the state court complaint, Nanyah Vegas LLC invested $1.5 million in Eldorado but never received an interest in Eldorado.

Nevada, to recover monies owed under the Purchase Agreement. The state court complaint asserted three causes of action on behalf of Huerta and the Alexander Christopher Trust against Rogich Trust: (1) breach of express contract; (2) breach of the covenant of good faith and fair dealing; and (3) negligent misrepresentation. The state court complaint also asserted a fourth cause of action on behalf of Nanyah Vegas, LLC, against Eldorado for unjust enrichment.

The first cause of action for breach of express contract alleged:

> That Defendant Rogich materially breached the terms of the Agreement when he agreed to remit payment from any profits paid from Eldorado, yet transferred his interest in Eldorado for no consideration to TEDL, LLC [sic]. This had the net effect of allowing Rogich to keep Huerta's $2,747,729.50 in capital, and not repay that same amount which had converted to a non-interest bearing debt.

The second cause of action for breach of the covenant of good faith and fair dealing alleged:

> That Defendant, Rogich has failed to maintain the obligations which he agreed upon as memorialized herein and in the Agreement as described herein and thereby failed to act in good faith and has also failed to deal fairly in regards to upholding his defined duties under the Agreement.

The third cause of action for negligent misrepresentation alleged:

> Rogich represented at the time of the agreement that he would remit payment to Huerta and Go Global as required, yet knew or reasonably intended to transfer the acquired interest to TELD, LLC; and furthermore knew that the representations made by him in the Agreement were in fact false with regard to tendering repayment or reasonably preserving the acquired interest so he could repay the debt in the future.

-7-

Thereafter, Rogich Trust moved for partial summary judgment; Huerta and the Alexander Christopher Trust cross-moved for partial summary judgment. The state court, the Honorable Nancy Allf, granted Rogich Trust's motion and dismissed the three claims asserted by Huerta and the Alexander Christopher Trust. In doing so, Judge Allf made the following findings orally on the record:

> A bankruptcy was filed on or about March 23 of 2010 by Go Global and on June 4 of 2010 it admits that it has a receivable. I do find that the listing of the receivable from Sig Rogich is sufficient to establish they have told their creditors that they have this receivable but it's after that that the problem begins to me. In the first disclosure statement filed on April 4 of 2011 it talks about avoidance of transfer; it mentions Paulson but never this transaction. When it talks about payments to creditors it's only from sale of assets. This receivable is never identified; litigation is never identified. There's no recovery of what might still at that point be a fraudulent transfer. And in page 18 of the first disclosure statement the liquidation analysis identifying assets only lists real estate and no receivables.

> Now after that while the disclosure statement is pending the Plaintiff makes a demand for payment on November 7 of 2012. So at that point this Plaintiff is charged with the knowledge that it knows it has a receivable but yet when it comes back on January 17 of 2013 with the first amended disclosure statement, it's the same thing again: payment to creditor by sale of assets, no identification of a receivable, no identification of litigation. And the same--Exhibit C, liquidation analysis lists only real estate and no receivables. The second disclosure statement, March 8 of 2013, same thing; no liquidation analysis identifying this so that creditors are never being told that this may be an asset that may be collected. We have the third amended disclosure statement on April 8 of 2013, again the disclosure statement, the liquidation analysis, income expenses, real estate only. It never lists the receivable or cause of action.

> And the reason that it matters is that in the Chapter 11 process you have the listing of the assets then you have a disclosure statement that tells creditors how they will get paid and then the plan

really just says how much they'll get paid and when. It's that disclosure statement that's operative and what the creditors use to vote whether or not to accept the plan. They were never told that there was a receivable to be collected. And the thing that really concerns me the most is that when the plan is confirmed on July 22 of 2013 with the affidavit of Mr. Huerta saying that everything in the plan and disclosure statement is true and accurate, eight days later Go Global assigns the receivable and sues somewhere else under a different name; it evidences no intention that the creditors of Go Global would ever, ever have benefitted from this transaction. This is a case that's very ripe for judicial estoppel and under the applicable case law the motion is granted.

Judge Allf entered an Order Granting Partial Summary Judgment (the "State Court Order") on November 5, 2014, which included the following three "legal determinations":

1.  On November 7, 2012, Huerta and Go Global were aware that they had a claim against the Rogich Trust.

2.  The said claim was not disclosed in Huerta's and Go Global's First Amended, Second Amended or Third Amended Disclosure Statements.

3.  The said claim was not disclosed in Huerta's and Go Global's Plan or their first, second or third Amendments to the Plan.

Based on the foregoing, Judge Allf determined that Huerta and the Alexander Christopher Trust were judicially estopped from asserting their claims against Rogich Trust and dismissed those claims. On February 23, 2015, Judge Allf entered a "Final Judgment" awarding judgment to Rogich Trust and dismissing the State Court Action with prejudice. Huerta and the Alexander Christopher Trust appealed the State Court Order, but that appeal was dismissed as untimely by the Nevada Supreme Court on June 26, 2015, and is not subject to further appellate review.[5]

_____

[5] Although it is not otherwise evident from documents
(continued...)

-9-

On November 17, 2014, Huerta assigned all of the Alexander Christopher Trust's rights in the Purchase Agreement back to Go Global. On November 26, 2014, three weeks after entry of the State Court Order and approximately one week after Huerta executed the November 17 assignment, Go Global filed an adversary proceeding against Rogich Trust, TELD, Imitations, and Eldorado seeking to recover the funds owed under the Purchase Agreement. The complaint asserts causes of action for civil conspiracy, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and fraud and/or negligent misrepresentation against Rogich Trust; and conspiracy and aiding and abetting in breach of fiduciary duty against TELD, Imitations, and Eldorado.

Imitations and Rogich Trust each filed answers to the complaint. Thereafter, Rogich Trust moved for summary judgment on grounds that Go Global was not the real party in interest and its claims were barred by claim preclusion; TELD and Eldorado moved to dismiss on the same grounds (collectively, the "Motions"). TELD and Eldorado also sought a determination that Go Global was judicially estopped from asserting claims against them. TELD and Eldorado also challenged the sufficiency of the

[5](...continued) comprising the record on appeal, the bankruptcy court noted in its oral ruling on November 16, 2015, that the dismissal of Nanyah Vegas LLC's claim was appealed, as was the award of attorney's fees to Rogich Trust. Additionally, as noted above, after this appeal was filed, Huerta and Go Global, as assignee of the Alexander Christopher Trust, moved the state court for reconsideration of the State Court Order. The state court denied that motion on April 28, 2016, and plaintiffs appealed to the Nevada Supreme Court on June 6, 2016.

-10-

allegations for civil conspiracy, and TELD argued that it was a bona fide purchaser of Rogich Trust's interest in Eldorado and was thus protected from Go Global's claims asserted in the adversary proceeding. Go Global opposed the Motions and also moved to amend its complaint to add causes of action for (1) actual fraudulent transfer against Rogich Trust; and (2) offset of attorney's fees awarded Rogich Trust in the State Court Action ("Motion to Amend").

The bankruptcy court heard argument on the Motions and the Motion to Amend on June 25, 2015 and issued an oral ruling on November 16, 2015, reserving one issue for further briefing and decision, as described below. Because the bankruptcy court considered matters outside the pleadings in ruling on the Motions, it deemed the motion to dismiss as a motion for summary judgment and combined its ruling on the Motions.

The bankruptcy court found that, with one exception, the elements of claim preclusion under Nevada law were met.[6] As discussed below, those elements are: (1) a valid final judgment; (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case; and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide

---

[6] The bankruptcy court addressed standing as a threshold issue and found that there was a genuine issue of material fact regarding Go Global's standing to maintain its claims in the adversary proceeding but that claim preclusion barred those claims, regardless of the identity of the real party in interest.

-11-

a good reason for not having done so. <u>Weddell v. Sharp</u>, 350 P.3d 80, 85 (Nev. 2015), <u>rehr'g denied</u> (July 23, 2015).

The bankruptcy court found that the State Court Order was a valid final judgment, and that the claims in the adversary proceeding were or could have been brought in the State Court Action. The bankruptcy court also found that plaintiffs Go Global and the Alexander Christopher Trust were in privity, and that defendants Rogich Trust and Eldorado were defendants in the State Court Action, thus satisfying the privity requirement. With respect to the additional defendants, TELD and Imitations, the bankruptcy court observed that the parties had not addressed whether those defendants were in privity with the state court defendants. The bankruptcy court noted that in <u>Weddell</u>, the Nevada Supreme Court broadened the concept of "privity" for claim preclusion purposes, subject to an exclusion. <u>See</u> <u>id.</u> at 85 ("[T]he parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so."). Because the Nevada Supreme Court's decision in <u>Weddell</u> had been issued shortly before oral argument in the bankruptcy court on the Motions, and rehearing was denied on July 23, 2015, after oral argument had taken place, the bankruptcy court permitted Go Global to brief whether it had a good reason for not including TELD and Imitations as defendants in the State Court Action.

The bankruptcy court denied the Motion to Amend as futile because the fraudulent transfer claim would also be barred by

-12-

claim preclusion, and the claim for offset could not be asserted by Go Global because the mutuality requirement for offset could not be met--the fees had been awarded against the Alexander Christopher Trust and not Go Global.

Thereafter, the parties submitted supplemental briefing regarding privity under Weddell as permitted by the bankruptcy court. On March 10, 2016, the bankruptcy court issued its Order on Pending Motions After Supplemental Briefing ("Order on Pending Motions") finding that Go Global had offered "nothing new by way of explanation as to why it did not include the claims now asserted as part of the State Court Action." Accordingly, the bankruptcy court adopted its oral ruling of November 16, 2015 granting the Motions and denying the Motion to Amend.

Go Global timely appealed.

### III. JURISDICTION

The bankruptcy court determined, without any substantive discussion, that it had jurisdiction over the adversary proceeding under 28 U.S.C. § 1334 as a "related to" proceeding.[7] Although no party has argued that the bankruptcy court lacked jurisdiction over the adversary proceeding, we have an independent duty to consider jurisdictional issues sua sponte. Alcove Inv., Inc. v. Conceicao (In re Conceicao), 331 B.R. 885, 890 (9th Cir. BAP 2005) (citing WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1135 (9th Cir. 1997)).

---

[7] The jurisdictional paragraph of Go Global's adversary complaint references §§ 547 and 548 and states that it is a core proceeding under 28 U.S.C. § 157(b)(2)(I), which pertains to dischargeability. However, all of the causes of action asserted in the complaint are state law claims.

-13-

A bankruptcy court has jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). A matter "arises under" the Bankruptcy Code "if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010) (citations omitted). A proceeding "arises in" a case under title 11 if it is "an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." Id. (citation omitted).

The bankruptcy court also has jurisdiction over proceedings that are "related to" a bankruptcy case. The Ninth Circuit has adopted the "Pacor[8] test" for determining the scope of "related to" jurisdiction: whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th Cir. 2005). Put another way, an action is "related to" bankruptcy if the outcome "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. (citations omitted).

---

[8] Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).

-14-

Notwithstanding the broad standard of Pacor concerning "related to" jurisdiction in general, subsequent case law indicates that **postconfirmation** jurisdiction is much narrower, and the Ninth Circuit has expressly adopted this approach.  In In re Pegasus Gold, the Ninth Circuit Court of Appeals adopted the "close nexus" test for postconfirmation jurisdiction as set forth in Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154 (3d Cir. 2004).  Under that test, postconfirmation bankruptcy court jurisdiction is limited to matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan.  Id. at 168-69.  The close nexus test requires "particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility."  Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1289 (9th Cir. 2013).

Here, the adversary proceeding is not a matter that "arises under" the Bankruptcy Code because it does not assert a cause of action created or determined by a statutory provision of the Bankruptcy Code, nor is it one that "arises in" a bankruptcy case, because the causes of action asserted are not unique to the bankruptcy process and could have been brought in another forum-- the claims in the original adversary complaint are all state law causes of action.  Thus, the only basis for jurisdiction would be "related to" jurisdiction.  However, there is no basis to conclude that the standards for "related to" jurisdiction have been met here.

-15-

First, the action is not "related to" the bankruptcy case under the traditional test: the resolution of the claims would not increase or diminish the size of the bankruptcy estate (which ceased to exist upon confirmation in any event) since the plan did not purport to utilize the proceeds from the claim to pay creditors, nor would it obligate Go Global to distribute any recovery to creditors because the confirmed plan did not so provide.

Second, and more importantly in this instance, the close nexus test is not satisfied. The claims asserted in the adversary proceeding did not require the bankruptcy court to interpret, implement, consummate, execute, or administer the plan. As noted, the claims were not disclosed in any version of the plan or disclosure statement and were not relied upon as a source of funding for the plan. To the extent the bankruptcy court considered the plan at all, it only needed to inspect the plan to determine what provisions it contained, or, more to the point here, did not contain. Although the state court arguably "interpreted" the plan to determine whether judicial estoppel barred the state court claims, in fact that review was also limited to observing the absence of any mention of the claim against Rogich Trust. And the bankruptcy court did not need to interpret the plan on these issues; indeed, it was prohibited from doing so, as it was required to give the state court judgment on this issue, from which no party appealed, full faith and credit. Moreover, to the extent the plan could be construed as reserving jurisdiction to the bankruptcy court to adjudicate that claim, such a reservation would be, by itself, ineffective.

See In re Resorts Int'l, 372 F.3d at 161 (holding that subject matter jurisdiction cannot be conferred by consent of the parties).

Go Global moved to amend its complaint to add a claim for fraudulent transfer, which is a core matter under 28 U.S.C. § 157(b)(2)(H) that "arises in" a bankruptcy case. However, adding such a claim would not automatically confer postconfirmation jurisdiction here because the plan did not provide for any distribution to creditors from such a claim (despite specifically providing for another avoidance claim).[9]

For these reasons, we conclude that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding. Because we may affirm on any basis supported by the record, Caviata Attached Homes, LLC v. U.S. Bank (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012), we would affirm on that basis. However, if a reviewing court finds that the bankruptcy court had jurisdiction, we would have jurisdiction under 28 U.S.C. § 158 to decide these issues on appeal, and, as discussed below, we find no error in the bankruptcy court's dismissal of the adversary proceeding or denial of Go Global's Motion to Amend.

## IV. ISSUES

1. Did the bankruptcy court err in granting Appellees' Motions on grounds that claim preclusion applied to bar

---

[9] Almost immediately after this appeal was filed, on March 30, 2016, the bankruptcy court entered an order closing the main bankruptcy case, finding that "Debtors made all payments in accordance with their Chapter 11 Plan and paid their creditors in full[.]"

-17-

Go Global's claims in the adversary proceeding?

2.    Did the bankruptcy court abuse its discretion in denying Go Global's Motion to Amend?

### V. STANDARD OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007).

We review rulings regarding the availability of claim preclusion de novo as a mixed question of law and fact in which legal questions predominate. Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988); Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002).

We review the bankruptcy court's denial of a motion to amend a complaint for an abuse of discretion. See Gerber v. Hickman, 291 F.3d 617, 623 (9th Cir. 2002) (en banc).

Under the abuse of discretion standard, we cannot reverse unless we have a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1138–39 (9th Cir. 1998).

### VI. DISCUSSION

**A.   The bankruptcy court did not err in finding that claim preclusion was available as a defense to the claims asserted by Go Global in the adversary proceeding.**

**1.    Standard for Application of Claim Preclusion**

Under the full faith and credit statute, the preclusive effect of a state court judgment in a subsequent federal lawsuit

-18-

is determined by reference to the preclusion law of the state in which judgment was rendered. <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985); <u>Far Out Productions, Inc. v. Oskar</u>, 247 F.3d 986, 993 (9th Cir. 2001). Because the judgment at issue was rendered by a Nevada state court, Nevada preclusion doctrines are applicable.

The Nevada Supreme Court has observed that "the purpose of claim preclusion is to obtain finality by preventing a party from filing another suit that is based on the same set of facts that were present in the initial suit." <u>Weddell</u>, 350 P.3d at 82.

Claim preclusion has a broader reach than issue preclusion:

> [W]hile claim preclusion can apply to all claims that were or could have been raised in the initial case, issue preclusion only applies to issues that were actually and necessarily litigated and on which there was a final decision on the merits. . . . [C]laim preclusion applies to preclude an entire second suit that is based on the same set of facts and circumstances as the first suit, while issue preclusion . . . applies to prevent relitigation of only a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of action and different circumstances.

<u>Five Star Capital Corp. v. Ruby</u>, 194 P.3d 709, 713-14 (Nev. 2008) (en banc), <u>as modified by</u> <u>Weddell</u>, 350 P.3d at 81-86.

In Nevada, a defendant asserting claim preclusion must demonstrate that (1) the final judgment is valid; (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case; and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit, and the plaintiff fails to provide

-19-

a good reason for not having done so. Weddell, 350 P.3d at 85.

Go Global argues that the bankruptcy court erred in finding that claim preclusion applied to bar its claims in the adversary proceeding. Go Global argues that the state court claims were not litigated on the merits; that the state court complaint was not dismissed with prejudice; and that the parties and claims are not identical. Go Global also contends that nonmutual claim preclusion does not apply because Go Global was not aware of facts giving rise to claims against TELD and Eldorado until over a year after the commencement of the State Court Action.

**2.      Application of the Standard to the Facts Presented**

**a.      The State Court Order is final and valid.**

Go Global contends that the State Court Order does not meet the "final and valid" requirement because (1) the State Court Order was not a final judgment for purposes of claim preclusion because it was entered without prejudice; and (2) the claims in the State Court Action were not actually litigated on the merits.

As noted, Judge Allf entered a Final Judgment in the State Court Action on February 23, 2015 awarding judgment to Rogich Trust and dismissing the State Court Action with prejudice. To the extent the State Court Order could be construed as having been entered without prejudice, the entry of the Final Judgment "with prejudice" corrected any purported ambiguity.

As to the "final and valid" requirement, Go Global seems to conflate the elements of issue preclusion and claim preclusion, which are two different doctrines with different elements. See Five Star Capital, 194 P.3d at 713 (setting out the elements for the application of each doctrine). The requirement that an issue

-20-

be "actually litigated" applies only to issue preclusion, not claim preclusion. See id. At oral argument, Go Global's counsel clarified that its contention is that the claims were dismissed on procedural rather than substantive grounds, which Go Global contends disqualifies the State Court Order and Final Judgment from having claim preclusive effect. The controlling case law does not support Go Global's position.

In Five Star Capital, the first lawsuit had been dismissed under a local court rule for the plaintiff's failure to attend a pretrial calendar call. The Nevada Supreme Court rejected the appellant's argument that the dismissal was not on the merits, holding that under Nevada Rule of Civil Procedure 41(b), a dismissal operates as an adjudication on the merits unless the dismissal is for lack of jurisdiction, improper venue, or failure to join a party.[10] 194 P.3d at 715. Because the order in the first suit had not been based on any of those grounds, the Nevada Supreme Court rejected the appellant's argument that the order at issue was not a valid final judgment. Id. The court noted that "[w]hile the requirement of a valid final judgment does not necessarily require a determination on the merits, it does not include a case that was dismissed without prejudice or for some reason (jurisdiction, venue, failure to join a party) that is not

---

[10] The rule provides, in relevant part:

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

-21-

meant to have preclusive effect." Id. at 713 n.27.

Despite the clear direction of this authority, Go Global insists that a dismissal based on judicial estoppel does not operate as an adjudication on the merits for purposes of claim preclusion. The cases cited in support of this argument do not support that conclusion. They loosely support the conclusion that nondisclosure of causes of action in a bankruptcy is not always grounds for a dismissal of those claims with prejudice, but they do not address whether a dismissal based on judicial estoppel may have claim preclusive effect in a subsequent proceeding. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996); The Glazier Grp., Inc. v. Premium Supply Co., Inc., 2013 WL 1727155 (N.Y. Apr. 16, 2013); and Bertrand v. Belhomme, 892 So. 2d 1150 (Fla. App. 3 Dist. 2005).[11]

---

[11] In Ryan Operations, the Third Circuit Court of Appeals held that the debtor's failure to disclose claims against non-creditors in a chapter 11 case did not bar a subsequent lawsuit outside of bankruptcy; the Court of Appeals declined to decide whether failure to disclose, standing alone, could support a finding that a plaintiff had asserted inconsistent positions because there was no evidence of bad faith by debtor's principal. In The Glazier Group, the New York Supreme Court held that a debtor's failure to disclose a claim against a non-creditor in its chapter 11 disclosure statement did not bar a subsequent suit outside of bankruptcy where the causes of action were unknown to the debtor when it filed for bankruptcy relief. Finally, in Bertrand, the Florida Court of Appeals reversed a trial court's dismissal with prejudice of a lawsuit for fraud on the court, which was based on many factors, including the plaintiff's nondisclosure of a lottery prize in her prior bankruptcy case. The appellate court held that the state court had no authority to sanction plaintiff for her conduct in the bankruptcy proceeding, and that the plaintiff's initial omission of the lottery prize
(continued...)

-22-

These cases are not controlling. In the Ninth Circuit, failure to disclose a cause of action in a plan or disclosure statement may constitute grounds for the application of judicial estoppel. See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001) (citing Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992)). In any event, to the extent Go Global is arguing that judicial estoppel should not have been applied, that is a collateral attack on the State Court Order. Even if the bankruptcy court agreed with that conclusion, it was required to give full faith and credit to the State Court Order and Final Judgment, which found that the Alexander Christopher Trust, as assignee of Go Global, was judicially estopped from asserting its claims against Rogich Trust.

Go Global also cites Classic Auto Refinishing, Inc., v. Marino (In re Marino), 181 F.3d 1142 (9th Cir. 1999), to support its argument that a dismissal on procedural grounds does not support the application of claim preclusion. In Marino, the bankruptcy court dismissed "with prejudice as to its reinstatement" an untimely nondischargeability complaint in the debtor's chapter 11 case. Thereafter, the case was converted to chapter 7, and new deadlines were set for the filing of objections to discharge. This time, the creditor filed a timely nondischargeability complaint. The debtor moved for summary judgment, arguing that the lawsuit was barred by "res judicata"

---

[11](...continued)
was not central to the lawsuit.

-23-

because of the prior dismissal with prejudice. The bankruptcy court denied the motion, and the BAP reversed.

The Ninth Circuit affirmed the bankruptcy court. It observed that although a dismissal with prejudice based on a statutory time limit may constitute a dismissal on the merits to bar a subsequent suit, the bankruptcy court in the case before it had not intended for the dismissal to operate as a bar to a future timely filed nondischargeability complaint. Marino, 131 F.3d at 1145. In so doing, the Ninth Circuit stated: "we do not subject res judicata law to a bouleversement. We only hold that in the unique world of the bankruptcy rules the particular facts of this case require a determination that [appellee] was able to press its new complaint." Id. at 1146. But here the Final Judgment, which disposed of the claims with prejudice, was clearly intended to be final, unlike the judgment at issue in Marino.

If anything, Marino supports the bankruptcy court's finding that the Final Judgment has preclusive effect. The Marino court noted that a dismissal on statutes of limitations grounds (an affirmative defense) presents a variation on the requirement that a final judgment must be on the merits to bar subsequent litigation of the same cause of action. Id. at 1144. The court noted that such dismissals

> are not on the merits in the sense that the underlying substantive claim has been adjudicated. Rather, the passage of time precludes testing whether the claim would otherwise have been valid. Nevertheless, for res judicata purposes a dismissal on statute of limitations grounds can be treated as a dismissal on the merits. Indeed, the Restatement has abandoned the "on the merits" terminology because, as it explains, "[i]ncreasingly . . . judgments not passing directly on

-24-

the substance of the claim have come to operate as a bar."

Id. (citing Restatement (Second) of Judgments § 19 cmt. a (1982)) (additional citations omitted). Like the statute of limitations defense, judicial estoppel is an affirmative defense that must be pleaded and proved.[12] If proven, an affirmative defense "will defeat the plaintiff's claim even if all allegations in the complaint are true." Douglas Disposal, Inc. v. Wee Haul LLC, 170 P.3d 508, 513 (Nev. 2007). If a dismissal on grounds of judicial estoppel is not on the merits for preclusion purposes, no dismissal based on an affirmative defense would have preclusive effect. Indeed, such a proposition would be contrary to the cited authorities.

In sum, the bankruptcy court did not err in concluding that the State Court Order was final and valid. There is no requirement for the application of claim preclusion that the prior matter be actually litigated, and the dismissal was on the merits for claim preclusion purposes. The Final Judgment was with prejudice, and the bankruptcy court was required to give that judgment (and the underlying orders) full faith and credit. Marino does not support the conclusion that the State Court Order

_____

[12] Other affirmative defenses include accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver. Nev. R. Civ. P. 8. A dismissal on any of these grounds would not be "on the merits" in the sense that if those defenses are successful, the court would not be required to evaluate the merits of the plaintiff's claims.

-25-

and Final Judgment were not entitled to claim preclusive effect.

### b. The subsequent action is based on the same claims or any part of them that were or could have been brought in the first case.

The bankruptcy court found that this element was satisfied because the claims asserted in the adversary proceeding were based on the same facts and circumstances as the first suit. Go Global argues that the addition of a claim for civil conspiracy negates this element.[13] However, Go Global focuses solely on the identity of the parties in support of this argument, which, as we explain below, misapprehends the relevant standard.

We find no error in the bankruptcy court's conclusion that the civil conspiracy claim could have been brought in the State Court Action. The claims asserted in both lawsuits are based on the same allegedly wrongful conduct by Rogich Trust. See Five Star Capital, 194 P.3d at 715 ("Since the second suit was based on the same facts and alleged wrongful conduct of Ruby as in the first suit, the breach of contract claim could have been asserted in the first suit. As a result, claim preclusion applies").

### c. Nonmutual claim preclusion applies because Go Global did not provide a good reason for not naming TELD or Imitations as defendants in the State Court Action.

In Weddell, the Nevada Supreme Court adopted the doctrine of nonmutual claim preclusion, which provides that claim preclusion can apply to a defendant not in privity with the original

---

[13] Go Global also states that its complaint included a fraudulent transfer claim, but no such claim was asserted in the original complaint.

-26-

defendants if "the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so." Weddell, 350 P.3d at 81. In the State Court Action, claims were asserted only against Rogich Trust.[14] In the adversary proceeding, Go Global asserted claims against Rogich Trust, Eldorado, TELD, and Imitations.

The bankruptcy court concluded that Eldorado, TELD, and Imitations should have been named as defendants in the State Court Action because Eldorado and TELD figured prominently in the state court complaint, and Rogich Trust received an ownership interest in Imitations in exchange for the transfer of Eldorado to TELD. The bankruptcy court also determined that Go Global had failed to provide a good reason for not naming the additional defendants in the State Court Action. The bankruptcy court cited Paragraph 23 of the state court complaint, which provides:

> That Defendant Rogich materially breached the terms of the Agreement when he agreed to remit payment from any profits paid from Eldorado, yet transferred his interest in Eldorado for no consideration to TEDL [sic], LLC. This had the net effect of allowing Rogich to keep Huerta's $2,747,729.50 in capital, and not repay that same amount which had converted to a non-interest bearing debt.

The bankruptcy court correctly found that these allegations, along with the allegation in Paragraph 13 of the complaint that the transfer made it impossible for Huerta and Go Global to receive their "rightful return of the debt," formed the basis for

---

[14] Although Eldorado was named as a defendant in the State Court Action, the claim against it was asserted by Nanyah Vegas LLC, not Go Global.

either an actual or constructive fraudulent transfer from Rogich Trust to TELD, and for the tort claims Go Global sought to assert:

> TELD was the transferee, and Imitations was the consideration Rogich received in exchange for transferring his interest in Eldorado Hills to TELD. While the First Amended Complaint does not identify Imitations, it sufficiently calls into question the bona fides of the transaction such that all of the participants to the transaction should have been named as defendants when that transaction was originally challenged.

Go Global argues that although it was aware of TELD's and Eldorado's involvement in Rogich Trust's transfer of its interest in Eldorado, it was not aware of the extent of that involvement or that TELD or Eldorado were part of a conspiracy to deprive Go Global of the funds it was owed under the Purchase Agreement. However, we find no error in the bankruptcy court's conclusion. The state court complaint reveals that Go Global knew of TELD's and Eldorado's involvement in the transaction. The allegations of the state court complaint also raise questions about the propriety of the transfer, supporting the bankruptcy court's conclusion that all participants should have been named as defendants in the State Court Action.

All the elements of claim preclusion were met, and the bankruptcy court did not err in finding that claim preclusion was available as a defense to bar Go Global's claims.

**B. The bankruptcy court did not abuse its discretion in denying Go Global's motion to amend the complaint.**

Go Global argues that the bankruptcy court abused its discretion in denying as futile Go Global's motion to amend the complaint to add claims for fraudulent transfer and offset of

-28-

attorney's fees awarded to Rogich Trust in the State Court Action. Go Global contends that it did not become aware of TELD's fraudulent transfer scheme until after the commencement of the State Court Action, but this contention is belied by the allegations of Paragraph 23 of the state court complaint quoted above. As such, the bankruptcy court correctly found that the claim would be barred by the doctrine of claim preclusion.

The bankruptcy court denied the motion to amend to add a setoff claim because no mutuality of obligations existed. The attorney's fee award was against the state court plaintiff, the Alexander Christopher Trust, while Go Global was the party attempting to assert a setoff claim. Setoff is authorized under § 553, but a party asserting a setoff claim must establish that each claim or debt arose prepetition and that the debts are mutual. Newbury Corp. v. Fireman's Fund Insurance Co., 95 F.3d 1392, 1398-99 (9th Cir. 1996). Mutuality requires that the countervailing debts must be "in the same right and between the same parties, standing in the same capacity." Id. (citations omitted). Although the Alexander Christopher Trust had assigned its rights under the Purchase Agreement to Go Global, it could not assign its liability for the attorney's fee award or alter Rogich Trust's right to collect from the Alexander Christopher Trust (nor was there any evidence that it attempted to do so). Because Go Global was not liable for the attorney's fees, the bankruptcy court correctly concluded that the debts at issue were not mutual.[15] Additionally, the claims did not both arise pre-

---

[15] The bankruptcy court also noted that the offset claim
(continued...)

petition; Go Global's claims against the defendants did not arise until 2012 when Rogich Trust transferred its interest to TELD.

On appeal, Go Global argues that its setoff claim is valid under the equitable doctrine of recoupment.[16] Go Global did not raise this issue in the bankruptcy court. Thus, we do not consider it. Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal. United Student Funds, Inc. v. Wylie (In re Wylie), 349 B.R. 204, 213 (9th Cir. BAP 2006) (citing El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.), 217 F.3d 1161, 1165 (9th Cir. 2000)) (additional citations omitted).

The bankruptcy court did not abuse its discretion in denying the Motion to Amend.

### VII. CONCLUSION

Because there was no "close nexus" between the adversary proceeding and Go Global's confirmed plan, the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding.

Alternatively, if the bankruptcy court had jurisdiction, it did not err in finding that claim preclusion was available to bar Go Global's claims against Appellees. Finally, for the reasons explained above, the bankruptcy court did not abuse its

---

[15](...continued)
asserted by Go Global was a collateral attack on the award itself, which was entitled to be given full faith and credit and could not be reviewed by the bankruptcy court.

[16] Setoff allows adjustments of mutual debts arising out of separate transactions between the parties. Recoupment, on the other hand, involves a netting out of debt arising from a single transaction. Oregon v. Harmon (In re Harmon), 188 B.R. 421, 425 (9th Cir. BAP 1995).

-30-

discretion in denying Go Global's Motion to Amend.

Accordingly, we AFFIRM.